# In the United States Court of Federal Claims

Nos. 10-106C, 10-127C (consolidated)
(Filed July 2, 2010)
(Reissued for Publication July 14, 2010)
TO BE PUBLISHED

|  |  |  |
|---|---|---|
| MAGNUM OPUS TECHNOLOGIES, INC. and THE HEALING STAFF, INC., | ) ) ) ) | Bid protest; tailored injunctive relief; motion to alter or amend judgment; Rules 59(a) and 59(e) of the Rules of the Court of Federal Claims; balancing economic harm to plaintiffs from inability to compete and potential interruption of medical care for active duty military personnel, veterans, and families of veterans |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| LUKE & ASSOCIATES, INC. and TERRAHEALTH, INC., | ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |

Barbara A. Duncombe, Taft Stettinius & Hollister LLP, Dayton, Ohio, for plaintiff Magnum Opus Technologies, Inc. Suzanne Sumner and Casie E. Hollis, Taft Stettinius & Hollister LLP, Dayton, Ohio, of counsel.

Michael P. Foley, Sky W. Smith, and Anthony J. Perfilio, Rendigs, Fry, Kiely & Dennis, LLP, Cincinnati, Ohio, for plaintiff The Healing Staff, Inc.

Elizabeth A. Speck, Trial Attorney, Deborah A. Bynum, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, and Tony West, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

Leigh T. Hansson, Reed Smith LLP, Washington, D.C., for defendant-intervenor Luke & Associates, Inc. Gregory S. Jacobs, Daniel Z. Herbst, Joelle E.K. Laszlo, Reed Smith LLP, Washington, D.C. and Jeremy R. Berger, Reed Smith LLP, Philadelphia, Pennsylvania, of counsel.

Patrick T. Rothwell, PilieroMazza, PLLC, Washington, D.C., for defendant-intervenor TerraHealth, Inc. Antonio R. Franco, PilieroMazza, PLLC, Washington, D.C., of counsel.

## **OPINION AND ORDER**[*]

GEORGE W. MILLER, Judge

Plaintiffs Magnum Opus Technologies, Inc. ("Magnum Opus") and The Healing Staff, Inc. ("Healing Staff") have moved pursuant to Rule 59(e) of the Rules of the Court of Federal Claims ("RCFC") to alter or amend the judgment entered in this case on May 13, 2010.[1] *See* Magnum Opus's Motion for Reconsideration to Alter or Amend the Judgment (docket entry 99, June 9, 2010) ("Magnum's Mot."); Healing Staff's Motion for Reconsideration (docket entry 100, June 9, 2010) ("Healing Staff's Mot."). Although plaintiffs succeeded on the merits of their bid protests, they are displeased with the injunctive relief fashioned by the Court. *See Magnum Opus Techs., Inc. v. United States*, __ Fed. Cl. ___, 2010 WL 2255523, at *26 (Fed. Cl. May 28, 2010) ("*Magnum Opus I*").[2]

In providing for tailored injunctive relief, the Court balanced the hardship to plaintiffs resulting from the Air Force's failure to engage in the proper competitive processes—specifically, the lost opportunity to compete in a fair procurement process—against the record evidence of significant hardship to the public and to the Air Force that would result from an immediate injunction of further performance of the ID/IQ contracts, including the potential disruption of critical medical care to Air Force active duty service members, veterans, and families of veterans. *Id.* at *27. Plaintiffs now contend that they were precluded from offering evidence of the financial burden that a failure to immediately enjoin any further performance of the ID/IQ contracts at issue would have upon them, and that if they had been permitted to offer such evidence the result of the Court's injunctive relief analysis would have been different. For the reasons stated herein, plaintiffs' motions are **DENIED**.

---

[*] This Opinion and Order was originally filed under seal on July 2, 2010 pursuant to the protective order entered on February 23, 2010 (docket entry 12). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted under the terms of the protective order. The parties filed a Notice of Filing Opinion with Proposed Redactions on July 14, 2010 (docket entries 109 & 110). The Court has reviewed the parties' proposed redactions and concluded that, with certain minor revisions, they are appropriate. Accordingly, the Court is reissuing its Opinion and Order dated July 2, 2010, with redactions indicated by three consecutive asterisks within brackets.

[1] Magnum Opus styles its motion as one for reconsideration. Healing Staff also states that it is filing a motion for reconsideration, but cites to Federal Rule of Civil Procedure 59(e). Final judgment was entered in these cases on May 13, 2010 (docket entry 94), and the Court has considered plaintiffs' filings to be motions to alter or amend the judgment pursuant to RCFC 59(e).

[2] See *Magnum Opus I* for a full discussion of the underlying facts. This opinion reviews only the facts relevant to the pending motion.

I.     **Standard of Review**

A motion for relief under RCFC 59 "enables a trial court to address oversights, and the court appreciates the opportunity to do so." *Holland v. United States*, 75 Fed. Cl. 492, 494 (2007) (quoting *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 315 (1999)). The Court possesses substantial discretion in addressing such a motion. *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990). In exercising this discretion, the Court must balance "the need to bring litigation to an end and the need to render just decisions on the basis of all the facts." *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990)).

Courts have recognized four grounds upon which granting of a motion to amend the judgment is appropriate: (1) to correct manifest errors of law or fact upon which the judgment is based; (2) so that the moving party may present newly discovered or previously unavailable evidence; (3) if necessary to prevent manifest injustice; or (4) an intervening change in controlling law. 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FED. PRAC. & PROC. § 2810.1 (2d ed. 1995). But "[t]he movant may not merely recapitulate 'cases and arguments considered by th[e] court before rendering its original decision.'" *Fru-Con Constr. Corp.,* 44 Fed. Cl. at 301 (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 721 F. Supp. 705, 706 (D.N.J. 1989)) (alteration in original). Moreover, "[l]itigants should not . . . be permitted to attempt an extensive re-trial based on evidence which was manifestly available at time of the hearing." *Gelco Builders & Burjay Constr. Corp. v. United States*, 369 F.2d 992, 1000 n.7 (Ct. Cl. 1966); *see also Del. Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1384 (Fed. Cir. 2010) (holding that a motion for reconsideration based upon manifest injustice should be granted only where the "Court has patently misunderstood a party, or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension . . . . Such problems rarely arise and the motion to reconsider should be equally rare.") (quoting *Z.K. Marine, Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)); *Totolo/King Joint Venture v. United States*, 89 Fed. Cl. 442, 446-47 (2009).

II.    **Discussion**

As the evidence took shape, it became clear that plaintiffs sought only an immediate injunction, and proffered several alternatives that would partially cover the Air Force's needs for medical services until new contracts could be awarded.[3] The Government, on the other hand,

---

[3] On April 22, 2010, the Court heard testimony on the nature of potential injunctive relief. On behalf of the defendant, Joseph B. Mirrow, the Deputy Director of the Air Force Medical Service Commodity Council, the body that administered the ID/IQ contracts, testified about the hardship an immediate injunction would cause. *Magnum Opus I*, 2010 WL 2255523, at *27-28. Additionally, plaintiffs cross-examined Mr. Mirrow on several alternatives to the ID/IQ contracts that could be utilized in the event of an immediate injunction. *Id.* at *28-34. The Court found Mr. Mirrow to be a knowledgeable and credible witness who responded to vigorous cross-examination in a thorough and persuasive manner.

contended that if an injunction issued, it would take approximately two years to replace the disputed contracts and that the alternatives proposed by plaintiffs would not assure uninterrupted medical coverage for Air Force active duty service members, veterans, and veterans' families.[4] *Magnum Opus I*, 2010 WL 2255523, at *34-35. Given these alternatives, the Court concluded that to ensure that there would be no gap in critical medical services pending recompetition, the appropriate remedy would be to enjoin work under the flawed contracts beginning two years from the date of judgment. *Id.* Although the Court recognized that this injunction would not put plaintiffs in as good a position as they would have been absent the Air Force's violation of applicable laws and regulations, it was the fairest alternative presented. *Id.* at *36.

In their motions, plaintiffs assert that they will suffer "manifest injustice" during the two-year period before the injunction takes effect, and Healing Staff suggests that the Court's failure to adequately consider the hardship to plaintiffs is a "manifest error of law." Magnum Opus's Mot. at 2; Healing Staff's Mot. at 4. In essence, plaintiffs' arguments are threefold. First, plaintiffs claim that they were improperly limited from presenting testimony as to the hardship they would face from any significant delay in enjoining the performance of the contracts. Magnum Opus's Mot. at 5; Healing Staff's Mot. at 3. Second, plaintiffs argue that the Court's balancing of hardships was improper because the Court only considered the deprivation of an opportunity to compete as a potential harm to plaintiffs, not the financial burden placed on plaintiffs from the loss of work. Magnum Opus's Mot. at 3; Healing Staff's Mot. at 3-4. Finally, plaintiffs proffer affidavits from the individuals who testified at the April 22 evidentiary hearing, which they contend demonstrate that the balance of hardships should tip in their favor sufficiently to justify additional injunctive relief. Magnum Opus's Mot. at 7; Healing Staff's Mot. at 5; Gerald Gregory Aff. ¶ 8 (June 9, 2010) ("Gregory Aff."), *attached as* Ex. 1 to Healing Staff's Mot.; Robert T. Manigault Aff. ¶ 17 (June 2, 2010) ("Manigault Aff."), *attached as* Ex. 1 to Magnum Opus's Mot. As explained below, the Court is unpersuaded by these three arguments.

  A. *Plaintiffs Were Not Denied the Opportunity to Present Evidence Regarding Hardship*

As a threshold matter, both plaintiffs contend that they were prevented "by the Court" "from explaining the harm [they] would experience if an injunction was tailored to afford the Air Force the full two years to re-procure as requested by Mr. Mirrow." Magnum Opus's Mot. at 5;

---

[4] Plaintiffs disputed the Government's estimate that it would take two years to put a new contracting vehicle in place and make new awards. In support of this assertion, plaintiffs offered the testimony of Robert T. Manigault, President and CEO of Magnum Opus, and Gerald Gregory, President of Healing Staff, who expressed their view that the process should take less than two years because the Air Force had previously acquired these services. *Magnum Opus I*, 2010 WL 2255523, at *29. But neither Mr. Manigault nor Mr. Gregory had any experience in the federal acquisition planning process and, therefore, the Court found their testimony regarding the time necessary to conduct a reprocurement to be unpersuasive. *Id.*; *see also* Magnum Opus's Mot. at 6 n.17 (recognizing that "in hindsight" plaintiff could not have effectively contested the Government's evidence with these witnesses).

*see also* Healing Staff's Mot. at 3.  Plaintiffs contend that they were precluded from offering evidence regarding harm to them because the Court stated that the evidentiary hearing was to be held in order to hear testimony regarding the "issue of harm to the Government if performance of the option work were enjoined."  Scheduling Order ¶ 2 (docket entry 66, Apr. 12, 2010).  Plaintiffs further observe that during a status conference prior to the evidentiary hearing, the Court commented that it did "not believe it is necessary to hear testimony regarding the potential harm to Plaintiffs if they are not able to compete for any work that would be potentially reprocured."  Transcript of April 12, 2010 Status Conference at 10 (docket entry 74, filed Apr. 16, 2010).

To begin, plaintiffs' contention is belied by the record, which demonstrates that plaintiffs in fact offered evidence of the financial burden they contended would result from any relief other than an immediate injunction, and that the Court considered this evidence.  Mr. Manigault stated that work from its ID/IQ contract constituted [***]% of Magnum Opus's gross revenue for 2009.  *Magnum Opus I,* 2010 WL 2255523, at *27; *see also* Robert T. Manigault Aff. ¶ 4 (Mar. 26, 2010), *attached as* Ex. 1 to Magnum's Motion to Supplement the Record (docket entry 59, Mar. 29, 2010) ("Gross revenue from the Contract totaled $[***], or [***]% of Magnum [Opus's] total revenue for 2009.  Because it has been deprived of the opportunity to compete for this work, Magnum expects that it will stand to lose approximately this same amount in the next year.").  In that regard, the Court cited, and accepted as true, Mr. Manigault's affidavit in concluding that plaintiffs were entitled to injunctive relief.[5]  *See Magnum Opus I,* 2010 WL 2255523, at *27, 34 (finding economic harm to plaintiffs but that "the harm to the Air Force from an immediate injunction is *at least equally as significant*") (emphasis added).  Furthermore, at the evidentiary hearing, Mr. Gregory represented that work from its ID/IQ contract constituted [***] of Healing Staff's gross revenue.  Transcript of April 22, 2010 Evidentiary Hearing at 84 (docket entry 84, filed Apr. 23, 2010).  The Court also credited Mr. Gregory's testimony.

If plaintiffs wished to offer additional evidence, they had ample opportunity to do so.  The parties submitted several rounds of briefs, including supplemental briefs at the Court's request, in which plaintiffs could have further addressed hardship to them.  Messrs. Manigault and Gregory, who had direct personal knowledge of the impact upon plaintiffs, testified at the evidentiary hearing and could have informed the Court, either at the hearing or otherwise, more specifically regarding the economic hardship to their respective companies.  In scheduling the evidentiary hearing, the Court directed the parties' attention to particular issues, but plaintiffs were certainly free to create whatever record they thought necessary.  Moreover, plaintiffs sought leave to supplement the record on multiple occasions with items they felt assisted their cause.  The Court's statements regarding the evidentiary hearing were entirely consistent with plaintiffs' ability to offer additional evidence by affidavit or supplementation of the record.  But as both

---

[5] Magnum's assertion that this affidavit was submitted only on the issue of standing is contradicted by its later reliance on the same affidavit as evidence of potential economic harm to Magnum.  Magnum's Mot. at 4, 8; Luke & Associates' Memorandum in Opposition to Plaintiffs' Motion to Amend the Judgment at 6 (docket entry 105, June 30, 2010) ("Luke's Resp.").

defendant and intervenor, Luke & Associates ("Luke") observe, plaintiffs never asked to provide additional information regarding harm to them, and thus that nonexistent request was never denied. Defendant's Response to Plaintiffs' Motion to Amend the Judgment at 11 (docket entry 106, June 30, 2010) ("Def.'s Resp."); Luke's Resp. at 6; *see also* Def.'s Resp. at 12 ("[P]laintiffs had ample opportunity to request an opportunity to provide supplemental evidence, but chose instead to rely upon their briefs as sufficient. They cannot now claim that their failure to introduce evidence is error upon the part of the Court.").

A motion to alter or amend the judgment is not intended "to give an unhappy litigant an additional chance to sway the court." *Matthews v. United States*, 73 Fed. Cl. 524, 525 (2006) (internal quotation and citations omitted); *see also Ajinomoto Co., Inc. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1350 (Fed. Cir. 2000) ("Rule 59(e) is not a vehicle for reopening judgments to present information that was long possessed by the movant and that was directly relevant to the litigation."). Plaintiffs in fact offered some of the evidence they now state they were precluded from offering, and could have offered more had they chosen to do so. Their choices cannot now be re-litigated because they did not lead to plaintiffs' desired result.

> B. *The Evidence Plaintiffs Seek to Rely Upon is of Limited Significance in Light of the Violation Alleged in Their Bid Protests*

In their motions to alter or amend the judgment, plaintiffs make somewhat inconsistent requests for orders to (1) modify all six ID/IQ contracts "to include a longer period of time" or (2) to terminate all of the task orders as of May 13, 2010. Magnum's Mot. at 13, 14; Healing Staff's Mot. at 6; *see also* Def.'s Resp. at 3 n.1. The first request would force the Air Force to contract with plaintiffs—an order this Court does not possess authority to enter. *See Parcel 49C Ltd. P'ship v. United States,* 31 F.3d 1147, 1153 (Fed. Cir. 1994); *see also Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859, 869 (D.C. Cir. 1970) ("It is indisputable that the ultimate grant of a contract must be left to the discretion of a government agency; the courts will not make contracts for the parties."). The second would require the Air Force to choose between alternatives that the Court has already found do not assure uninterrupted medical coverage. *Magnum Opus I*, 2010 WL 2255523, at *29-34. The injunctive relief now sought by plaintiffs is either the very relief they disclaimed seeking in order to establish this Court's jurisdiction (*i.e.,* exercise of the options contained in plaintiffs' contracts), or consists of contracting alternatives that the Court already rejected as insufficient.[6]

---

[6] Magnum Opus alternatively argues—for the first time—that the Court should enjoin performance under the ID/IQ contracts "immediately or for *some period of time substantially shorter than*" two years from the entry of judgment. Magnum Opus's Mot. at 14 (emphasis added). This argument simply comes too late and "cannot be made for the first time" in a motion to alter or amend the judgment. *United Sur. & Indem. Co. v. United States*, 90 Fed. Cl. 203, 208 (2009); *see also Bluebonnet Sav. Bank, F.S.B. v. United States*, 466 F.3d 1349, 1361 (Fed. Cir. 2006). Moreover, even if the Court were to consider this argument, plaintiffs present no new evidence to rebut Mr. Mirrow's testimony that it would take two years to recompete the ID/IQ contracts. Def.'s Resp. at 16 ("Moreover, Magnum has failed to show how further truncating the

Moreover, the evidence that plaintiffs now belatedly proffer is of limited significance given the violation plaintiffs alleged in their complaints. Plaintiffs vigorously and clearly defined their case as *not* involving the failure of the Air Force to exercise the options in their own contracts, but instead as challenging the exercise of the options in the other awardees' contracts. *Magnum Opus I*, 2010 WL 2255523, at *7. Indeed, plaintiffs asserted that it was irrelevant that they had been awardees in the base period whose options had not been exercised. *Id.* at *9. The injury to plaintiffs was that the work had been awarded "through a process that should have been the subject of competition." *Id.* at *10 (quoting *CCL, Inc. v. United States*, 39 Fed. Cl. 780, 789 (1997)). That is, plaintiffs were not entitled to be awarded a contract; they were entitled to an opportunity to compete for a contract.

Plaintiffs succeeded upon this very narrow and specific rationale, but now wish to change their theory at the remedy stage. Contrary to their position on the merits, plaintiffs' new evidence addresses damages from the loss of *work*, not the loss of the *opportunity to compete*. Def.'s Resp. at 13-14; Luke's Resp. at 3-4. In describing the hardship to them, plaintiffs ask the Court to assume that *if* the Air Force properly conducted a new competition, and *if* plaintiffs were eligible to compete, and *if* plaintiffs did compete, *then* plaintiffs would be awarded contracts and receive work.[7] Def.'s Resp. at 9-10 ("Plaintiffs cannot say with any degree of certainty that they will receive the same portion of work that they previously performed if the MATO [ID/IQ] contracts were immediately recompeted. The plaintiffs also cannot establish that they would necessarily receive the same task orders that were previously awarded to the plaintiffs if those task orders became the subject of open competition."). According to this newly fashioned rationale, the harm to plaintiffs is their failure to *receive a contract*, not the loss of an opportunity to compete for one.

The relevant harm to plaintiffs from the failure of the Air Force to hold a competition for the work covered by the options is the loss of the opportunity to compete, not the loss of work resulting from the expiration of plaintiffs' contracts by their terms at the end of the base period. *See Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008). All of the evidence plaintiffs now say they would have introduced goes to the hardship to plaintiffs from not being *awarded* a contract, rather than losing the opportunity to *compete* for a contract. While the Court does not in any way seek to minimize impact of its tailored injunctive relief on plaintiffs, their financial hardship does not flow from the loss of the opportunity to compete, the harm plaintiffs sought to rectify in the first place. *See id.* Thus, under the theory upon which

---

option period would allow the Air Force to re-procure necessary medical services more quickly."). Nor have plaintiffs been able to show that there are alternative contracting vehicles that would ensure uninterrupted provision of critical medical care. Thus, there is no basis in the record to shorten the two-year period before the injunction takes effect.

[7] The Government notes that even if the contract options had been exercised, plaintiffs were not entitled to any additional work, as the contractual minimums had been satisfied. Def.'s Resp. at 9. The Government cannot be faulted for plaintiffs' business decision to rely so heavily upon these ID/IQ contracts for profitability. *Id.*

plaintiffs actually prevailed, the evidence that plaintiffs claim they were precluded from offering is of limited relevance to the Court's task in fashioning tailored injunctive relief that both redresses the violation established by plaintiffs and avoids interruption of medical care for the beneficiaries of the ID/IQ contracts at issue.[8]

### C. Having Given Full Consideration to Plaintiffs' Newly Proffered Evidence, the Court Reaffirms The Fairness of Its Earlier Order Awarding Tailored Injunctive Relief

Even if the injury to plaintiffs from not actually receiving a contract from the Air Force could be considered the measure of the relevant hardship to plaintiffs, a proper analysis of such

---

[8] At the close of the April 22, 2010 evidentiary hearing, plaintiffs similarly requested that the Court enjoin the Air Force from re-competing task orders plaintiffs were performing that were set to expire after the hearing and before the Court had rendered a decision. The Court denied this request, writing:

> Plaintiffs' complaints allege not that they are entitled to ID/IQ contracts, but that the options in the four current ID/IQ contracts were exercised without compliance with applicable laws and regulations. . . . The Court concludes that it would not be appropriate to order a *de facto* sole source award of these task orders to plaintiffs, who are not contesting the Air Force's refusal to exercise the options in the ID/IQ contracts they previously held. Even if the Government *had* exercised those options, plaintiffs would not be entitled to simply retain the work covered by these task orders, but would instead have participated in a competition among ID/IQ contract holders for new task orders. Thus, plaintiffs' request to require the Government to extend their task orders seeks to put them in a better position than they would have been even if they were current holders of ID/IQ contracts. Moreover, to the degree that it is unclear whether the task orders can be extended, the Air Force would be potentially unable to provide necessary medical services.

Order at 2 (docket entry 82, Apr. 22, 2010). This rationale applies equally to plaintiffs' request in the current motions, which similarly ask the Court to extend plaintiffs' task orders, something that would, in effect, amount to a *de facto* sole source award of the task orders to plaintiffs. The Court has no authority to award plaintiffs such relief even if it were warranted. *See, e.g., Parcel 49C Ltd. P'ship,* 31 F.3d at 1153; Def.'s Resp. at 13-15. Luke observes that "the loss of the existing revenues derived from the existing MATO Contract would be the type of harm suffered by contractors, and not prospective bidders, as Plaintiffs have taken great pains to establish they are. Plaintiffs cannot have it both ways." Luke's Resp. at 6 n.3. Both Luke and the Government take rightful exception to plaintiffs' establishing jurisdiction in this court by asserting that they were suing only as prospective bidders, not contract holders, and at the end of the case seeking essentially the remedy they earlier contended was not their goal. Def.'s Resp. at 13-15; Luke's Resp. at 3-4.

hardship would have to discount for the possibility that plaintiffs would not have received a contract if a competition had been held.  Here, there is significant evidence in the record suggesting that if the option work had been re-competed, plaintiffs would not have been in a position to receive an award due to their poor performance under the prior ID/IQ contract.  *See Magnum Opus I*, 2010 WL 2255523, at *4 n.6 (observing that the Air Force's performance assessments "identified Magnum Medical and Healing Staff as the least successful performers in most categories").[9]

Moreover, the competition for these ID/IQ contracts was fierce, with 28 companies competing for five contracts.  Def.'s Resp. at 9.  Plaintiffs cannot show, particularly with their adverse performance history, that in a new competition they would be awarded any contract, let alone the same volume of task orders that they had received during the base period of the contract.  Thus, one entirely plausible scenario is that when the Air Force re-competes the work, whether that occurs in 2012 or tomorrow, plaintiffs will not be awarded contracts in that new competition.  Plaintiffs would then suffer exactly the same financial harm they now allege is caused by the failure to compete—which further demonstrates that the harm alleged does not result from the lack of competition, but instead from the failure to receive an award.

Nonetheless, the Court's balancing analysis did in fact give plaintiffs the benefit of the doubt and considered plaintiffs' potential economic hardship as part of its analysis of the balance of harms.  *Magnum Opus I*, 2010 WL 2255523, at *27, 34.  In addition, the Court has reconsidered and again performed its analysis of the four factors relevant to the propriety of injunctive relief, giving full consideration to the two new affidavits proffered in connection with the motions to amend the judgment.  Having done so, the Court adheres to its prior conclusion that the tailored injunctive relief mandated by the Court's May 13, 2010 Opinion and Order reflects the fairest and most reasonable relief to which plaintiffs are entitled, consistent with the record evidence and the broader public interest.  The economic hardships that plaintiffs rely upon flow from their failure to receive a contract, and even if it were the proper measure of harm, it would be discounted for the distinct possibility that plaintiffs would not, in fact, be awarded contracts.  Properly considered, that hardship does not outweigh the likely and possibly grave hardships that would be visited upon active duty service members, veterans, and veterans' families if the Court's injunction did not assure the continued availability of critical health care services while the Air Force conducts the competitive reprocurement required by the Court's

---

[9] *See also* Administrative Record ("AR") Tab 45 at 4604 (docket entry 23, Mar. 1, 2010) ("All four contractors [for whom options were being exercised] have demonstrated substantial or satisfactory performance during the base period of their contracts.  Performance was based on critical performance objectives for overall fill percentages, on-time fill rates, turnover percentages, and MTF/patient complaints.").  For example, in the final year of the base period for the ID/IQ contracts, Magnum Medical and Healing Staff respectively filled only [***]% and [***]% of their positions in a timely fashion.  AR Tab 19 at 4154; Tab 25 at 4279.  Luke filled [***]% of its positions on time, AR Tab 17 at 4117; TerraHealth filled [***]% of its positions on time, AR Tab 23 at 4250; RLM Services filled [***]% of its positions on time, AR Tab 21 at 4201; and American Health Services filled [***]% of its positions on time, AR Tab 15 at 4075.

Order.[10]  Having given full consideration to plaintiffs' additional evidence, the Court finds that it does not alter the analysis of the fairness of the injunctive relief awarded to plaintiffs in the Court's Order of May 13, 2010.

## CONCLUSION

For the reasons stated above, plaintiffs' motions to alter or amend the judgment are **DENIED**.[11]

Some information contained herein may be considered protected information subject to the protective order entered in this action on February 23, 2010 (docket entry 12).  This opinion shall therefore be filed under seal.  The parties shall review the opinion to determine whether, in their view, any information should be redacted prior to publication in accordance with the terms of the protective order.  The Court **FURTHER ORDERS** that the parties shall file, no later than **5:00 p.m. on Wednesday, July 14, 2010**, a joint report identifying the information, if any, they contend should be redacted, together with an explanation of the basis for their proposed redactions.

**IT IS SO ORDERED.**

s/ George W. Miller
GEORGE W. MILLER
Judge

---

[10] The Court is required, pursuant to 28 U.S.C. § 1491(b)(3), to give "due regard to the interests of national defense and national security" when considering bid protests.  To the extent that critical medical care for active duty service members, veterans, and veterans' families impacts the effectiveness of the Nation's armed forces, this consideration further supports the Court's tailored injunctive relief.

[11] The Court takes this opportunity, pursuant to RCFC 60(a), to correct, *sua sponte*, a clerical error in the May 13, 2010 judgment.  In paragraph 1 of the judgment, the portion of the sentence stating "any subsequent task orders issued under the options must also be concluded by May 13, 1202" should, of course, read "any subsequent task orders issued under the options must also be concluded by *May 13, 2012*."  The Court hereby **ORDERS** that the judgment entered May 13, 2010 shall be, and the same hereby is, amended accordingly.